Good morning, everybody. First case we have on calendar, case number 25-3735. Fernanda Estefani Beltran Rizo v. Todd Blanche. Counsel may approach the podium. And if you would like to reserve time for rebuttal, you may do so. Thank you. Good morning, and may it please the Court. My name is Shannon Murphy, and I represent the petitioners, Ms. Beltran Rizo and her minor daughter. May I request two minutes for rebuttal, please? Yes, you may. Thank you. Your Honors, the case today turns on one question. Whether or not Ms. Beltran Rizo demonstrated good cause for not meeting her biometrics deadline. Because the record demonstrates significant support for Ms. Beltran's explanation, and because the immigration judge abused his discretion in finding otherwise, petitioners respectfully request this Court remand for further proceedings. Now, the good cause standard that is at issue in this case is codified at 8 CFR 1003.47. There is no specific definition for the good cause standard, but this Court's cases on the biometrics deadline do provide some guidance that is a case-by-case determination. There is no hard deadline or hard rule that applies to the good cause standard here. As I look at this record, it's the lawyer saying one thing and the client is saying another thing. Did the I.J. ever weigh the evidence one against the other and come to a determination? Your Honor, if you're discussing to the December 3rd, 2024 hearing, the I.J. did not weigh the evidence from the respondent at the time, the petitioner today, versus her former counsel. The I.J. seemed to accept the former counsel's statements at face value and reject the petitioner's statements. But what's concerning about this case most specifically is not necessarily whether the evidence was weighed properly, but whether Ms. Beltran-Rizzo reasonably relied on the relationship she had with her former counsel during her removal proceedings and whether or not her reasonable reliance is why she missed her biometrics deadline. Counsel, I would like to go back to your response to Judge Hawkins. So you said there was no weighing, but then you said that the I.J. credited the counsel's version of events, that the breakdown in communication was due to your client not responding to the attorney. So there was a finding then, right, according to what you're saying, or is there not? There was a finding with regards to what the I.J. alleged as miscommunication between the former counsel and Ms. Beltran-Rizzo. But there was no necessarily weighing of the evidence in terms of whether Ms. Beltran-Rizzo's versions of events were supported by the record. A really important event that happened here is at the May 9th, 2024 hearing. The immigration judge did speak directly to Ms. Beltran-Rizzo, but the immigration judge informed Ms. Beltran-Rizzo that your attorney will schedule an appointment for you regarding the biometrics. That statement is really, really important because it demonstrates that Ms. Beltran-Rizzo was going to rely on her attorney scheduling the appointment. So you're saying you want to remand. What, in your view, should happen on remand? Well, Your Honor, on remand, the petitioner should be given the opportunity to proceed on her applications for relief. When the immigration judge determined that she had— That is to say, you just want to remand and we should say you must grant a continuance? Is that what you want? Your Honor, we're respecting that you find that good cause was established. The immigration judge and the board abused their discretion in finding otherwise. On what basis would we do that when we have conflict in the testimony between the— I won't—I guess I'll say the lawyer, but at the time of the hearing, he had become the former lawyer. We have two different stories. If she's telling the truth, maybe she gets it. If she's not telling the truth, maybe she doesn't. What do we do about that? Well, there is some record evidence that this court can look to. Again, there's the immigration judge's statement on May 9th that credits Ms. Beltran-Rizzo's story that her former counsel would schedule an appointment. But also at page 112, there also is evidence that her former counsel did attempt to schedule an appointment for her as the immigration judge advised former counsel would do and as Ms. Beltran-Rizzo relied upon. But it was sent to the wrong agency. It was sent to an agency that has absolutely no authority to conduct the biometrics. So there's record evidence that supports Ms. Beltran-Rizzo's version of events. And the concern here is that there was no consideration given to that record evidence, especially if this court looks to the board's decision. And is it established beyond question that it was sent to the wrong agency? Your Honor, based on the record evidence that is provided, the immigration judge did not ask former counsel whether he actually sent the biometrics to the correct agency, the United States Citizen and Immigration Services. The immigration judge didn't ask the former counsel whether he requested biometrics at all. So all that this court has in front of it right now is the administrative record showing former counsel requesting the immigration court to conduct biometrics and set an appointment for his client. And what evidence do we have then that he sent it to the sent the request to the wrong agency? Where's that evidence coming from? Page 112. It's a letterhead from former counsel, and it requests that the agency he sent it to, the Executive Office for Immigration Review, the Seattle Immigration Court, schedule an appointment for biometrics for his client. So we have undisputed evidence that he sent it to the wrong place. Undisputed evidence that the immigration judge did not acknowledge and undisputed evidence that the board did not touch. And that is a very important piece of consideration. And so if there are no further questions. I have one question. So the grounds for the denial in this case that both the IJ and the BIA gave was that your client was told directly by the IJ that it was her responsibility to have biometrics done. Otherwise, she risked her petition being denied. And she said she understood that. Why isn't that dispositive here? Your Honor, that statement is not dispositive because if you go just one line above the summarized analysis that the board is referencing to, if you go one line above it, that's when the immigration judge says to Miss Beltran Rizzo, your attorney will schedule an appointment for you. There is no statement from the immigration judge at that May 9th hearing that says you must schedule your appointment. What the immigration judge say is that you must attend that appointment, but he does not say that you must schedule that appointment. And those words really matter, especially when we're talking about a relationship between a noncitizen who doesn't understand the intricacies of the immigration system and her counsel at the time. Counsel, but doesn't the record also show that there had been a breakdown in communication according to her testimony months before the deadline for having her biometrics scheduled? And so if she had this much time, she needed a new lawyer. She could have gotten it. It was still on her to get the biometrics done, and she had several months to do so. What's your response to that? Yes, the record does reflect that there was this breakdown of communication. But her counsel did not request to withdraw from the proceedings until the night before that December 3rd, 2024 hearing. So up until December 3rd, when she appeared and Mr. Pisa was there, her former counsel, as of the record, her former counsel was her counsel of record. And more important is that Miss Beltran Rizzo provided testimony that her former counsel took the instructions in question from her after the hearing on May 9th, 2024, which is a very important element because without those instructions, Miss Beltran Rizzo didn't have an understanding of what was provided. And her former counsel's statement at the December 3rd hearing supports that understanding because he claims, without any evidence, without providing any receipt of mailing and without the immigration judge asking further, that more recently he had mailed the instructions to Miss Beltran Rizzo. So that shows that he had possession of the instructions from the May 9th hearing. Thank you, counsel. Thank you. Mr. Rook. Good morning. May it please the court. Mark A. Rook on behalf of the Acting Attorney General. The instant petition for review should be denied. The board did not abuse its discretion in determining that petitioner did not demonstrate good cause for failure to meet her biometrics requirements. And to the extent that petitioner raises an ineffective assistance of counsel claim against her former counsel, there was no attempt to meet the requirements of Lizada. There's no explanation for why that did not happen. And the ineffective assistance, the alleged ineffective assistance, is not obvious and undisputed on the face of this record. There's no dispute here that petitioner was provided with proper notice under 8 CFR 1003.47 C and D, as is evident in the record, certified administrative record page 83. Petitioner was handed the instructions. She was told of the requirement to complete her biometrics, told of the consequences for failing to do so, and when to complete those. And she stated she had no questions at the time. Let me ask you this. As I read your brief, both at page 5 of your brief and at page 15 of your brief, you quote from the record. And the petitioner says, yes, like I was saying previously, the lawyer told me at that moment that that didn't matter, that they would tell me when the asylum was first and I didn't know how to do it. Then immigration judge to lead petitioner, but you did know. Now, you have three dots in front of but you did know. That suggests that in that passage where immigration speaks, there was some language that was omitted. But in fact, much more than that was omitted. You omitted a full exchange, the following exchange you omitted. The exchange was, and I didn't know how to do it. And then this is what you omitted, the judge. But you were given written instructions. So my question is, why didn't you follow them? You need to pause, you need to pause for the interpreter. Then Ms. Rizzo says, the lawyer kept the documents and he didn't tell me. Look, you have to do this or you have to go here. I didn't know that I had to do that. And I even had an ankle monitor on me. I have calls every 15 days, video calls, and have followed everything to the T. If I would have known that I have to do it, now you left that out. Why? And it's not clear that you did leave it out. In this brief, Your Honor, we believe that the petitioner effectively raised those points in their own brief and we are raising our own argument. It's not an answer to the question. The question is why did you leave that passage out? Because the passage is quite favorable to the other side and it's not clearly indicated that you left it out. Apologies, Your Honor, if that was left out. That was not intentional, not any intention to obfuscate anything before this court. You're trying in the brief to make the appointment that the blame lies with the petitioner. But you leave out the segment where she explains in response to the IJ's questions why that didn't happen. Did you think that was unimportant? Respectfully, Your Honor, the good cause standard in this case for biometrics comes down to the due diligence that petitioner demonstrates. Well, what she said and what you left out is an attempt to demonstrate good cause and you left it out. That's, Your Honor, that's good cause for completing her check-ins but nothing to do with the biometrics requirements. Well, you could have left that in and then made that argument. Understood, Your Honor. But you just left it out without clearly indicating that you left it out. Understood. The government's position is and the government would argue that that due diligence that she attempted to demonstrate there has nothing to do with the good cause standard in this case for completing biometrics because she was clearly informed of those requirements. Seven months had passed and she was unable to do that despite knowing months beforehand, as Judge Tong aptly pointed out, knowing months beforehand that there had been this miscommunication and making no affirmative efforts on this record. Well, no, wait a minute. She just says she made affirmative efforts and that's what you left out. She says, I have calls every 15 days, video calls. I followed everything to a T. If I had known, the lawyer kept the documents. He didn't tell me. That's that's her good cause. And you left it out. We can we can say that doesn't actually amount to good cause, but that's her argument for good cause. I understand, Your Honor. Respectfully, that those video calls have nothing to do with her attempts to communicate with her lawyer or the miscommunication in this case or the biometrics. But at the beginning, the lawyer kept the documents. He didn't tell me, look, you have to do this. And at the time that the biometrics instructions were given, the immigration judge made it clear that the application would be abandoned if those biometrics were not completed. Yes, the immigration judge did say your attorney will make that appointment for you. But that was clearly under the situation, under the circumstances and the facts of this case where petitioner was represented at the time. It was clear at that time. Well, she was represented up until the day before the hearing. That's correct. The last hearing. Right. And during the hearing, it is the government's position that the immigration judge did develop the record on certified administrative record pages 88 to 90 in order to suss out what exactly happened during this dispute, during this breakdown of communication that took place. The shield that took place that broke off the immigration judge's questioning was when the petitioner's former counsel stated that I will not say more without breaking attorney client privilege. That was former counsel's way of saying I don't want to do more harm to the petitioner in this case. I respectfully wish to step away. And then at that point, page 91, the petitioner stated, I don't wish for this attorney to represent me anymore. On page 93, she stated that that's after he withdrew. Yes. Yes, Your Honor. I don't think at that point she had any choice. Yes. Well, petitioner was asked before the immigration judge determined that former counsel had withdrawn whether or not she still wanted him to represent her. And she said no. And then on page 93, she is asked whether she is ready to speak for herself that day. She said yes. Then she said, is she prepared to go forward? She said yes. On this record, it is clear that she was she indicated she was ready to go forward. There was no request for continuance. And the case continued. The immigration judge, which was different from the previous one, took the time to listen to the entirety of the biometrics instructions that were given. Listen to the entirety of petitioner's explanations, as you pointed out, Judge Fletcher, and determined based on that that there was no good cause shown. It is the government's position that this is not an abuse of discretion, that that determination was not arbitrary, irrational or contrary to law. Counsel, do we need to find that there had been ineffective assistance of counsel in order to find good cause? In other words, what's the standard we look to in determining whether there's good cause? The standard we look to in determining good cause is due diligence by the petitioner. And in this case, the government's position is that a miscommunication with an attorney does not constitute good cause. It's the government's position that the appropriate thing to do in this case, if petitioner, after the fact, wanted to keep her claims for relief going, she would have had to raise an ineffective assistance of counsel claim with the proper Lazada requirements. As this court has effectively held in Reyes v. Ashcroft, the Lazada is the basis to effectively assess ineffective assistance. It weeds out false or frivolous claims and it promotes professional responsibility. We have no clear affidavit on this record besides petitioner's statements during the hearing that what exactly happened. We have no fee agreement with her former counsel to lay out the contract in this case. We have no opportunity to respond from former counsel so that he could explain what happened. And we have no bar complaint memorializing all of this. Is there daylight between finding ineffective assistance of counsel and finding good cause? In other words, if we don't find ineffective assistance of counsel because we agree with you, let's presume for the moment that the Lazada notice requirements weren't satisfied. Could we nevertheless find or excuse her, her failure to obtain biometrics because she relied on her lawyer and that somehow was reasonable on the record? Is that an avenue here? They are separate issues, Your Honor. One with respect to specifically petitioner's own efforts and one with respect to the communications of former counsel. In this case, they are somewhat uniquely intertwined because the basis or the core of this claim, the core of this proceeding comes down to the miscommunication between petitioner and her former attorney, which is laid out on the record and which contrary to petitioner's assertions, the government would assert the immigration judge did his duty to develop the record, took the time to listen to both sides, took the time to listen again to the biometrics requirements, and then took the time to listen to petitioner's explanations. This is this is the duty to develop the record met in this case. Petitioner in this case did not show anything, demonstrating that she made efforts affirmatively to do these biometrics. As this court is held in Gonzales Valley's V. Bar, the way to show good cause is by due diligence. Tell me if I have a couple of facts wrong. And I invite you to correct me if I'm in if I misapprehend these facts. Number one, the former counsel sent the biometrics request to the wrong agency. Is that correct? That is correct. The petitioner says that she called and talked to him and he refused to return her calls. Is that clear from the record? That was her testimony. Your honor. OK. And then counsel. I'm still talking about the same counsel filed a motion to withdraw, which was denied. The immigration judge denied it. Correct. That is correct, your honor. Respectfully, if I may. Let me finish and then you can tell me where I'm wrong. And then when the motion was denied and he showed up in front of the I.J., he claimed that it was the petitioner who was not returning his calls. Is that correct? That was his claim. Yes, your honor. OK. Tell me why I'm wrong. You're not wrong about any of that, your honor. That is a correct factual description of the sequence of events. At the end of the day, what we have, though, is a conflict on this record between what the attorney is alleging happened and what petitioner is alleging happened. What's wrong with sending it back to resolve that? The way to send it back, your honor, would have been through a fully compliant motion to reopen for it based on ineffective assistance of counsel. But unfortunately, we don't have that here. OK. Why do we have to find ineffective assistance of counsel? That is to say, lawyers make mistakes all the time that do not rise to the level of ineffective assistance of counsel. That's true, your honor. But then, though, there may be this may be a mistake that does not arise to the level of ineffective assistance of counsel. So why do we have to do Liz out of in order to send it back? Because, your honor, the standard in this court, based on cases like Castillo Perez and Reyes v. Ashcroft, is that it needs to be obvious and undisputed on the record. If there if none of the requirements are met, I see that I'm pretty significantly over my time here. No, but I'm not sure you answered my question. I think you conceded that you can have some lawyer mistakes that do not rise to the level of ineffective assistance of counsel. Yes, that's correct, your honor. And so if this might be a lawyer mistake that did not rise to the level of ineffective assistance of counsel, why does she have to comply with Lizada? All she's saying is, listen, he made a mistake and the mistake hurt me. Respectfully, your honor, with with the miscommunication in this case, it's not clear that there was a lawyer mistake. Well, it might or might not have been. But she says there was. And Judge Hawkins' question was, why don't we send it back to determine, you know, where where was the mistake or what did happen? Understood, your honor. So why does that require that this be Lizada? Because that is the operative way in which to show that a former lawyer made a mistake. Well, but I think you just conceded that not all mistakes are ineffective assistance of counsel. I mean, counsel, you I mean, the way I see it is even if there may not be an ineffective assistance of counsel in this case, there still may not be a good cause for reopening or having a continuance in this matter, because, as you said earlier, it turns on counsel's diligence and there is conflicting testimony as who's at fault for the communication. And the IJ and the BIA, and I think your friend on the other side also said that there was a determination made here that that there was a communication and that she was responsible for. Nevertheless, for having the biometrics done. In other words, the reliance would be unjustified. At the end of the day, your honor, the burden of proof in this case is on the petitioner. It's not on petitioner's counsel. She has to prove as as the court required in Gonzalez V. Bar, she has to prove that she did something herself to pursue this biometrics requirement. She was effectively given explicit notice through the immigration judge in the former hearing of what she had to do. And then in the next hearing, the only testimony that we have from her is that she waited. Right. She did her calls. She did her check ins 15 days, but that has nothing to do with her representation. Your honor. Well, wait a minute. In the passes that you left out, she says the lawyer kept the documents. He didn't tell me, look, you have to do this. You have to do that. During this time, she was represented. He would cease to withdraw later. But during this time, she was represented and the lawyer kept the documents, which if the lawyer were doing his job, that's not a mistake to keep the documents. But once he keeps the documents, he's got to take positive steps to go to the right agency and say, hey, here's your appointment. Yes, your honor. But the lawyer's own testimony is that he did send the documents to the wrong but to the wrong place. But no, he mailed the doc, the biometrics instructions to her. Apologies. But but he sent the request to the wrong agency. That is correct. With about after a month or so of the initial May hearing, he sent those in June. Another six months passed with no further progress. Your honor. There was a breakdown in communications and nothing else shown. And the former attorney claimed that he'd sent those instructions. Let me try a question. If you can answer yes or no, I'd appreciate it. At the time of the hearing that we're discussing here today, was this particular immigration judge operating under a quantity requirement? I'm not sure what you mean, your honor. Was he required to dispose of a certain number of cases? That day, I don't know. Just tell me. I believe from the immigration judge's decision, he does mention that it is an expedited docket case. I don't know what the quantity he was operating under. OK, thank you. Appreciate you. And just to quickly conclude, I know I'm very far over my time for the reasons set forward in the government's brief. And set forward during this argument today, the instant petition for review should be denied. Thank you. Thank you, counsel. Thank you. Briefly on rebuttal, as this panel has questioned, there is no need to reach the ineffective assistance of counsel prong to determine whether good cause exists. And play it has versus Lopez, Lopez versus Barr provides a very strong guidance for that analysis. In this matter, we have attorneys instructions that post dated the immigration judge's instructions on biometrics immigrant. And if anything, the attorney's instructions to miss Beltran Rizzo mirror the instructions that she received at the May 9th hearing that her attorney would schedule the appointment for her. And second, in a play test versus Lopez, there was no necessary finding that counsel's assistance was ineffective. Was it an error? Yes. But that alone was enough to find that there was an abuse of discretion at the agency level. And if I may briefly, there is due diligence demonstrated in this case. This is a span of seven months where the petitioners showed up to every single hearing that was required of them. They complied with the check in requirements. And while that's not through the immigration court, it shows their due diligence to proceed with their immigration matter. And they also submitted their asylum application through counsel timely. And so for all of those reasons, petitioners respectfully request this court find that good cause did exist in the agency abuse of discretion. Thank you. I ask you one quick question. Yes. How did you get this case? How did I get this case? The petitioners came to our firm to handle their appeal to the Board of Immigration Appeals. Thank you. Thank you. Thank you, counsel. Thank you. This case is submitted.
judges: HAWKINS, FLETCHER, TUNG